Amy S. Young  (AY-5547)
Communications Workers of America Legal Department
275 Seventh Avenue, Ste. 2300
New York, New York  10001
212-419-1550 (voice)
212-419-1555 (facsimile)

*JUDGE LYNCH*

# 08 CV 2348

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

GERARD FENN,          :          Civil Action No.:
                      :
          Plaintiff,  :          **NOTICE OF REMOVAL OF ACTION**
                      :
    - against -       :
                      :
VERIZON COMMUNICATIONS INC.,  :
CWA LOCAL 1109, and   :
CWA INTERNATIONAL,    :
                      :
          Defendants. :
                      :
----------------------------------------------------x



     Defendants Communications Workers of America, AFL-CIO ("CWA"), and

Local 1109 of the Communications Workers of America (collectively, "Union

Defendants"), by and through their counsel, Amy S. Young, Esq., desiring to remove this

civil action from the Supreme Court of the State of New York, New York County, Index

No. 07-114631, to the United States District Court for the Southern District of New

York, pursuant to 28 U.S.C. §1441, hereby submit this Notice of Removal and allege as

follows:

     1.    Plaintiff, Gerard Fenn, commenced an action on or about October 31,

2007, by filing a Summons and Complaint in the Supreme Court of the State of New

York, New York County, Index No. 07-114631. A copy of Plaintiff's Summons and Complaint is attached hereto as Exhibit A.

2.    The Notice of Removal is being filed within thirty (30) days of the receipt of the Summons and Complaint by the Union Defendants and is timely filed under 28 U.S.C. § 1446(b).

3.    The Union Defendants' time to answer or otherwise move with respect to the Summons and Complaint has not expired.

4.    Plaintiff alleges in his Complaint that the Union Defendants violated the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL") by refusing to file a grievance based upon Plaintiff's complaints regarding gender and religious discrimination at his workplace.

5.    Plaintiff's action against the Union Defendants, therefore, is a suit for breach of the duty of fair representation by a labor organization that arises under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, requiring that a union represent all employees without hostility or discrimination, in good faith, and not arbitrarily.

6.    State law claims are preempted if they attempt to impose obligations on a union that are subsumed by the duty of fair representation. Plaintiff's New York Human Rights claims impose no new obligation on the union that is not already required by the duty of fair representation. Therefore, Plaintiff's claims against the Union Defendants are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. See, e.g., Cabrera v. City of New York, 436 F.Supp.2d 635 (S.D.N.Y. 2006), Cooper v. Wyeth Ayerst Lederle, 34 F.Supp.2d 197 (S.D.N.Y. 1999).

7.    Although a state court claim cannot ordinarily be removed to federal court based on a preemption defense, under certain circumstances, the preemptive force of a federal law is so "extraordinary" that it "converts an ordinary state [law] complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542 (1987). Preemption under § 301 of the Labor Management Relations Act has been specifically identified as one area of the law in which such complete preemption exists. Avco Corp. v. Int'l Ass'n of Machinists, 390 U.S. 557, 88 S.Ct. 1235 (1968).

8.    This Court therefore has original jurisdiction of the above-entitled action pursuant to 28 USC § 1331, and removal of the action to this Court is proper pursuant to 28 § USC 1441 (b).

9.    Defendant Verizon Communications, Inc., by its attorneys, has consented to the removal action. A copy of the consent is attached hereto as Exhibit B.

WHEREFORE, the Union Defendants respectfully requests that this action be removed to the United States District Court for the Southern District of New York.


Dated: New York, New York
      March 6, 2008

Respectfully submitted,

By: _____
Amy S. Young (AY-5547)
275 Seventh Avenue, Ste 2300
New York, NY 10001
212-419-1550 (voice)
212-419-1555 (facsimile)

TO: Donald L. Sapir, Esq.
   Attorney for Plaintiff
   Sapir & Frumkin
   399 Knollwood Road, Suite 310
   White Plains, New York  10603

   Scott H. Casher, Esq.
   Attorney for Defendant Verizon
   Edwards, Angell, Palmer & Dodge
   750 Lexington Avenue
   New York, New York  10022

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GERARD FENN,

                              Plaintiff,

     - against -

VERIZON COMMUNICATIONS INC.,
CWA LOCAL 1109,
and CWA INTERNATIONAL,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
To the above named Defendants:

Index No.: 07- 114631
Date Purchased: 10/31/07

Plaintiff designates
New York County as the
place of trial

The basis for venue is:
Verizon Communications
Inc.'s principal place of
business

**SUMMONS**
Plaintiff's residence is:
Union County, New Jersey

     **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the plaintiff's attorney(s) within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: White Plains, New York
        October 31, 2007

                        **SAPIR & FRUMKIN LLP**

                        By: _____
                         Donald L. Sapir
                         Attorneys for Plaintiff
                         399 Knollwood Road, Suite 310
                         White Plains, New York 10603
                         (914) 328-0366

DEFENDANTS' INFORMATION:
**Verizon Communications Inc.**
Principal Place of Business Office is located:
140 West Street
New York, New York 10007

REGISTERED AGENT FOR VERIZON COMMUNICATIONS INC.
CT Corporation System
111 Eighth Avenue
New York, New York 10011

NEW YORK
COUNTY CLERK'S OFFICE

OCT 3 1 2007

NOT COMPARED
WITH COPY FILE

ATTORNEY REPRESENTING VERIZON COMMUNICATIONS INC.:
Steven Martin, Esq.

**CWA Local 1109**
Principal Place of Business Office is located:
1845 Utica Avenue
Brooklyn, New York, 11234

ATTORNEYS REPRESENTING CWA LOCAL 1109:
Amy S. Young, Esq.
Semel, Young & Norum
275 Seventh Avenue, Suite 2300
New York, New York 10001
212 419 1550
fax (212) 419- 1555

**CWA International**
Principal Place of Business Office is located:
501 3rd Street NW
Washington, DC 20001

F:\APPLICAT\WP\Fenn, Gerard\Summons.wpd

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x       Index No.: 07 - 114631

GERARD FENN,

                                          Plaintiff,                    **COMPLAINT**

            -against-

                                                                        JURY TRIAL
VERIZON COMMUNICATIONS INC.                                             DEMANDED
CWA LOCAL 1109,
and CWA INTERNATIONAL,

                                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, **GERARD FENN**, by his attorneys, **SAPIR & FRUMKIN LLP**, alleges for his

Complaint, as follows:

## I. NATURE OF CLAIMS

1.      This is an action for damages caused by Defendants, **VERIZON**

**COMMUNICATIONS INC.** ("Verizon"), **CWA LOCAL 1109**, and **CWA INTERNATIONAL**

(collectively, "Defendants") for gender discrimination, hostile work environment, religious

discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL"),

N.Y. Executive Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New

York City Administrative Code § 8-107 *et. seq.*

## II. VENUE & PARTIES

2.      At all times mentioned herein, Plaintiff has been a resident of the State of New Jersey,

County of Union.

3.      Upon information and belief, Defendant Verizon Communications Inc. is a foreign

business corporation authorized to transact business within New York State. Upon information and

belief. at all times relevant to this action, Verizon has been doing business and continues to do business on a regular basis within the State of New York, so as to give this Court personal jurisdiction of Defendant Verizon. Defendant maintains its principal place of business at 140 West Street. New York, New York 10007. Plaintiff performed services on behalf of and in furtherance of Defendant Verizon's business on a regular basis within the State of New York. Verizon is an employer within the meaning of N.Y. Exec. Law §§ 292(5) & 296(1); and New York City Admin. Code § 8-107(1)(a).

4.    Upon information and belief, at all times relevant to this action, Defendant CWA Local 1109 is a labor organization within the meaning of N.Y. Exec. Law §§ 296(c); and New York City Admin. Code § 8-107(1)(c). Upon information and belief, at all times relevant to this action, CWA Local 1109 has been doing business and continues to do business on a regular basis within the State of New York, so as to give this Court personal jurisdiction of Defendant CWA Local 1109. Defendant CWA Local 1109 maintains its principal place of business office at 1845 Utica Avenue, Brooklyn, New York, 11234. Plaintiff is a member of CWA Local 1109.

5.    Upon information and belief, at all times relevant to this action, Defendant CWA International is a labor organization within the meaning of N.Y. Exec. Law §§ 296(c); and New York City Admin. Code § 8-107(1)(c). Upon information and belief, at all times relevant to this action, CWA International has been doing business and continues to do business on a regular basis within the State of New York, so as to give this Court personal jurisdiction of Defendant CWA International. Defendant CWA International maintains its principal place of business office at 501 3rd Street NW, Washington, DC 20001. Plaintiff is a member of CWA International.

6.    Venue is proper in New York County based upon Verizon's principal place of business located at 140 West Street. New York, New York 10007.

## III. FACTUAL BACKGROUND

7.    Mr. Fenn is a 28 year long-term dedicated employee of Verizon, who began his employment on May 14, 1979. Mr. Fenn worked his way up through the company with salary increases and promotions and has held the position of cable maintenance splicer in excess of 15 years. Prior to his medical leave of absence beginning in November 2004, Mr. Fenn reported to work in Brooklyn at the 26th Ave. Garage.

8.    On or about March 18, 2004, a CWA Local 1109 union member confronted Mr. Fenn in an intimidating manner. The union member shouted profanities at Mr. Fenn for having worked overtime hours. Mr. Fenn, who had no prior history of animosity with any co-worker(s), was surprised and felt physically threatened by the union member's conduct. Mr. Fenn reported the incident to a union official.

9.    On or about March 22, 2004, the union member, angry that Mr. Fenn reported his conduct to the union, put his face in Mr. Fenn's face and shouted, in words or substance, "who the f*ck are you to call the union on me?" Verizon manager, John McHugh witnessed the incident and was able to stop the co-worker's confrontation of Mr. Fenn. Mr. Fenn walked away.

10.    On or about April 7, 2004, Mr. Fenn and his work partner, Paul Barrese, discovered graffiti in the Verizon Avenue R Facility men's bathroom directed towards the both of them. The graffiti was sexually explicit and was depicted throughout the stalls of the bathroom. Examples of the graffiti include drawings of male genitalia, a "cartoon" of Mr. Fenn performing fellatio, and writings such as, "Jerry Fenn Likes Sex With Men," "Barrese Likes His Dildo Greasy," "Jerry Fenn likes hairy men," "Barrese still likes his dildo Greasy."

11.    On or about April 20, 2004, as Mr. Fenn and Mr. Barrese were exiting the 26th Ave.

Facility, the discriminatory conduct continued when a Verizon splicer shouted at Mr. Fenn and called him a "scumbag."

12.     Later that day, Mr. Fenn and Mr. Barrese discovered additional graffiti directed towards Mr. Fenn that was both religiously and sexually offensive in nature. The graffiti included additional drawings of male genitalia as well as the writing, "Gerry Fenn is a Jewish dwarf." On the same day, Mr. Fenn made a written complaint about the above-mentioned harassment to his Manager/Foreman, Ronald Abraham. Mr. Fenn showed Mr. Abraham pictures of the sexually and religiously offensive graffiti, and explained that he felt threatened by his hostile working environment.

13.     On or about April 21, 2004, Mr. Fenn discovered additional graffiti on a table in the 26th Ave. break room where all employees gather in the morning to receive their work assignments for the day. The graffiti read, "Gerry Fenn is a Rat Fuck." Mr. Fenn complained to Ronald Abraham and to Mr. McHugh that the discriminatory conduct was ongoing and showed them the graffiti.

14.     Later that morning, while Mr. Fenn and Mr. Barrese were in the back of their work truck preparing their supplies for the day's work, two persons known to Mr. Fenn to be union officials, entered the back of the vehicle, blocked the exit in a physically threatening manner and demanded that Mr. Fenn give them his camera, memory card, and any pictures he took of the harassing graffiti. Mr. Fenn refused. One of the union officials threatened Mr. Fenn that if he pursued his harassment/discrimination complaint further with management there would not be any place he could work in the company without having the reputation of being a "rat fuck." Mr. Fenn was especially concerned for his physical safety after this encounter with the two union officials.

3

15.    Going forward, in an attempt to avoid further physical threats and harassment from his union and co-workers, Mr. Fenn tried to limit his interaction with co-workers by waiting in the hallway outside the 26th Ave. break room in the mornings in order to receive his daily assignments. Mr. Fenn could not escape the discriminatory conduct and harassment and on or about May 3, 2004, Mr. Fenn found more explicit graffiti directed towards him in the Ave. R Facility men's bathroom. Mr. Fenn reported the graffiti to Mr. Abraham and requested to meet with Mr. McHugh about the escalating harassment and hostile work environment.

16.    On or about May 4, 2004, Mr. Fenn met with Mr. McHugh, discussed the harassment he was subjected to and showed him photographs of the discriminatory graffiti. Mr. Fenn explained to Mr. McHugh that he had concerns for his safety and well-being and requested a change in work hours, so that he would be in a better position to avoid co-workers who continuously threatened and harassed him. Mr. McHugh assured Mr. Fenn that the matter would be referred to Verizon security for an investigation and suggested that Mr. Fenn contact the Employee Assistance Program ("EAP").

17.    Inexplicably, Verizon took no action to remove the offensive and discriminatory graffiti from its facilities.

18.    Mr. Fenn met with Verizon EAP counselor, Harry Menges, on or about May 19, 2004. Mr. Fenn told him about his hostile work environment, including the offensive graffiti and the threats from co-workers. Mr. Fenn explained that he was experiencing severe anxiety as a result of his working conditions and that he had concerns for his well-being and safety. Incredulously, Mr. Menges asked him, "are you doing this for the money?" In response, Mr. Fenn explained that he was seeking help to remedy the hostile working environment he was subjected to and that he had already sought help from his managers on more than one occasion, all to no avail. Mr. Menges recognized

4

that Mr. Fenn was traumatized by the harassment he was subjected to at work and he suggested that he see a psychiatrist for treatment and counseling.

19.    The discrimination and harassment continued, and on or about June 22, 2004, Mr. Fenn's company identification was stolen by an unidentified union co-worker. It was later found 3 miles away in the men's bathroom at Verizon's 71st Street Central Office. Mr. Fenn was notified by a union member that the identification card was found in the men's bathroom. Mr. Fenn asked the union member whether the identification card was found in the toilet. With a smirk on his face, the union member responded that Mr. Fenn was warm, thus indicating Mr. Fenn guessed correctly.

20.    Notably, when Mr. Fenn reported the identification card stolen to Verizon security, Mr. Fenn was informed by security that neither Mr. McHugh nor Mr. Abraham had reported Mr. Fenn's earlier complaints of discrimination/harassment and physical threats from union co-workers, and neither had requested that a workplace investigation be conducted.

21.    After the stolen identification incident, Mr. Fenn contacted Mr. Menges and asked why Verizon was not taking any action to end the harassment and discrimination against him. Mr. Fenn complained to Mr. Menges that Verizon management continuously failed to take any meaningful action to end the hostile working environment. Mr. Menges referred Mr. Fenn to the Verizon Human Resources Helpline. Mr. Fenn called the number and discovered that it was an automated system, and left a message with the hope that a human would respond. Mr. Fenn was never contacted by anyone from Verizon Human Resources.

22.    Mr. Fenn did not report to work from June 23rd through June 25, 2004. Mr. Fenn called Verizon security on or about June 23, 2004 and spoke with Security Officer Darrell Nelson. Mr. Fenn explained the circumstances of the discrimination and harassment, including the threats

from union co-workers and the sexually and religiously offensive graffiti that were found in Verizon facilities and Verizon cross-boxes, which had still not been removed despite his complaints to management. Mr. Nelson confirmed that neither Mr. McHugh nor Mr. Abraham filed a report with security about Mr. Fenn's harassment and discrimination complaints.

23.    Mr. Fenn requested a transfer to a different work location, however, no action was ever taken by Verizon, CWA Local 1109, or CWA International to remove Mr. Fenn from the hostile work environment by transferring him to a different work location despite Mr. Fenn's requests for a transfer.

24.    On or about June 25, 2004, Mr. Fenn contacted Mr. Nelson and explained that he feared returning to work because he felt physically threatened by his union co-workers. Mr. Nelson told Mr. Fenn that he was expected to return to work and gave no assurances regarding his safety in the workplace. Mr. Nelson informed Mr. Fenn that he would start an investigation the following week. Mr. Fenn was never asked for a written statement or account of the harassment.

25.    Mr. Fenn met with Mr. Nelson and another Verizon security officer, Sylvana, on June 29, 2004 to further discuss his hostile work environment. Mr. Fenn was told that Verizon security did an investigation and could not determine who wrote the offensive graffiti or who stole his identification card.  Security refused to provide Mr. Fenn any information about the investigation. Mr. Fenn told security that he was concerned that he would be retaliated against by union co-workers for his complaints of sexual and religious harassment.  Security failed to alleviate Mr. Fenn's anxiety. Security told Mr. Fenn in words or substance, "just go about your work and notify us if you notice any more graffiti or harassment. We will make sure management restates Verizon's harassment policy with the guys."

6

26.    The hostility from union co-workers continued against Mr. Fenn. On or about June 29, 2004, upon Mr. Fenn's return to work after a three-day sick leave due to anxiety caused by the hostile work environment, a union co-worker openly exhibited hostility towards Mr. Fenn by stating, "you should have stayed out five weeks."

27.    Mr. Fenn continued his communication with Security Officer Nelson in an e-mail dated, July 10, 2004. On or about July 12, 2004, Mr. Fenn again spoke with Mr. Nelson about a possible work location transfer. Mr. Nelson said he would keep Mr. Fenn informed of his contact with Human Resources about a transfer. Mr. Fenn did not hear anything more from Mr. Nelson after this conversation.

28.    Despite Mr. Fenn's complaints about the ongoing harassment, CWA Local 1109, CWA International and Verizon failed to take steps to remedy the hostile work environment. The offensive graffiti were not removed from the men's bathrooms or the cross-boxes and insufficient action, if any, was taken to prevent union co-workers from writing new graffiti targeting Mr. Fenn.

29.    In September 2006, Mr. Fenn discovered new graffiti on a Verizon cross-box on 83rd Street and 18th Ave. in Brooklyn which read, "Stay in shape, toss a dwarf today." This graffiti referred to other graffiti, which read, "Jerry Fenn is a Jewish Dwarf." Mr. Fenn also discovered in September 2006 that the offensive graffiti were not removed from the men's bathrooms in Verizon's facilities.

30.    Upon information and belief, discriminatory and offensive graffiti was still on the wall in the bathroom at the Verizon Avenue R Central Office on January 3, 2007.

31.    In November 2006, Mr. Fenn wrote to John Dempsey, President of CWA Local 1109 and Morton Bahr, President of CWA International complaining about his hostile work environment

7

and the involvement of union officials in perpetrating the discrimination and retaliation. Mr. Fenn requested the union to pursue a grievance on his behalf to remedy the discrimination and retaliation. Mr. Fenn's request went unanswered.

32.     In or around December 2006, Mr. Fenn was contacted by a supervisor, who stated, in words or substance, that if Mr. Fenn was thinking of pursuing any legal action against Verizon, he would have to first quit. Mr. Fenn reasonably inferred that he would be the subject of retaliation if he pursued his complaints against the company. The supervisor's comment left Mr. Fenn feeling helpless and anxiety laden.

33.     Mr. Fenn suffers and continues to suffer anxiety and severe emotional distress because of the hostile work environment Verizon, CWA Local 1109 and CWA International allowed to continue and the retaliatory actions taken by Defendants against Mr. Fenn.

34.     The continuing nature of the discrimination and harassment against Mr. Fenn from on or about March 18, 2004 until present establishes that he was subject to a continuing hostile working environment.

## IV.  AS AND FOR A FIRST CAUSE OF ACTION
### (AGAINST VERIZON, CWA LOCAL 1109, CWA INTERNATIONAL)
### DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW
### AND NEW YORK CITY HUMAN RIGHTS LAW
### (HOSTILE WORK ENVIRONMENT BASED UPON SEX)

35.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.     The sexual and religious offensive graffiti written by CWA union co-workers on Verizon property, including bathroom walls and cross-boxes, as well as the physical and other retaliatory threats directed at Mr. Fenn by union co-workers and a Verizon manager resulted in a hostile work environment for Mr. Fenn.

8

37.    Defendant employer Verizon was aware of the hostile environment and failed to take remedial action. Verizon is therefore, liable for the hostile work environment perpetrated by its employees.

38.    Defendants CWA Local 1109 and CWA International are subject to liability under the NYCHRL and the NYSHRL based upon its members and agents active participation in the hostile work environment and the retaliatory conduct of its members against Mr. Fenn.

39.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his gender, Defendants Verizon, CWA Local 1099, and CWA International violated the New York State Human Rights Law, and the New York City Human Rights Law.

40.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer damages, including, but not limited to pain and suffering, humiliation, mental anguish, emotional distress and loss of enjoyment of life.

41.    Plaintiff seeks front pay, compensatory damages, including emotional distress, and loss of enjoyment of life, attorneys' fees and costs and punitive damages.

## V. AS AND FOR A SECOND CAUSE OF ACTION
### (AGAINST VERIZON, CWA LOCAL 1109, CWA INTERNATIONAL) DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW - AND NEW YORK CITY HUMAN RIGHTS LAW (HOSTILE WORK ENVIRONMENT BASED UPON RELIGION)

42.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43.    The sexual and religious offensive graffiti written by CWA union co-workers on Verizon property, including bathroom walls and cross-boxes, as well as the physical and other retaliatory threats directed at Mr. Fenn by union co-workers and a Verizon manager resulted in a hostile work environment for Mr. Fenn.

9

44.    Defendant employer Verizon was aware of the hostile environment and failed to take remedial action. Verizon is therefore, liable for the hostile work environment perpetrated by its employees.

45.    Defendants CWA Local 1109 and CWA International are subject to liability under the NYCHRL and the NYSHRL based upon its members and agents active participation in the hostile work environment and the retaliatory conduct of its members against Mr. Fenn.

46.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his religion, Defendants Verizon, CWA Local 1099, and CWA International violated the New York State Human Rights Law, and the New York City Human Rights Law.

47.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer damages, including, but not limited to pain and suffering, humiliation, mental anguish, emotional distress and loss of enjoyment of life.

48.    Plaintiff seeks front pay, compensatory damages, including emotional distress, and loss of enjoyment of life, attorneys' fees and costs and punitive damages.

## VI.  AS AND FOR A THIRD CAUSE OF ACTION
### (AGAINST VERIZON, CWA LOCAL 1109, CWA INTERNATIONAL)
### DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW
### AND NEW YORK CITY HUMAN RIGHTS LAW
### (RETALIATION)

49.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.    Defendants Verizon, CWA Local 1109, CWA International violated the NYCHRL and the NYSHRL by subjecting Mr. Fenn to a hostile work environment in retaliation for his complaints of discrimination.

51.    Defendants CWA Local 1109 and CWA International also violated the NYCHRL and the NYSHRL by refusing to file a grievance based upon Plaintiff's complaints to the Union of the discrimination and harassment he experienced.  Defendants CWA Local 1109 and CWA International acquiescence to the discrimination was a deliberate act of retaliation in response to Plaintiff's complaints and opposition to Defendants' unlawful discrimination under the NYSHRL and the NYCHRL.

52.    By subjecting Plaintiff to a hostile work environment in retaliation for his good faith complaints and opposition to Defendants' unlawful discrimination, Defendants have violated the anti-retaliation provisions of the NYSHRL and the NYCHRL.

53.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer damages, including, but not limited to, pain and suffering, humiliation, mental anguish, emotional distress and loss of enjoyment of life.

54.    Plaintiff seeks compensatory damages, including emotional distress and loss of enjoyment of life, attorneys' fees and costs, and punitive damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.    Declare Defendants' conduct complained of herein to be a violation of Plaintiff's rights under the New York State Human Rights Law, and the New York City Human Rights Law.

2.    Award Plaintiff the following damages:

## VIII. ON ALL CAUSES OF ACTION

3.    Compensatory damages for pain and suffering, humiliation, mental anguish,

11

emotional distress, and loss of enjoyment of life sustained by Plaintiff, for an amount to be determined at trial, but not less that $2,000,000.00 for each cause of action.

4.    Interest on the amount described above calculated at the prevailing rate;

5.    Attorneys' Fees;

6.    Reasonable costs incurred in prosecuting this action; and,

7.    Punitive damages, in an amount to be determined at trial, but not less than $2,000,000.00 for each cause of action.

## IX.  JURY DEMAND

Plaintiff demands a trial by jury of all issues in this action properly triable before a jury.

Yours, etc.
**SAPIR & FRUMKIN LLP**

Dated: White Plains, New York
   October 31, 2007

By: _____
Donald L Sapir, Esq.
Attorneys for Plaintiff Gerard Fenn
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366

F:\APPLICAT\WP\Fenn, Gerard\Complaint.10.07.wpd\rlh

12

INDEX NO.  07-114631

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GERARD FENN,

Plaintiff,

-against-

VERIZON COMMUNICATIONS INC., CWA LOCAL 1109,
and CWA INTERNATIONAL,

Defendants.

**SUMMONS AND COMPLAINT**

SAPIR & FRUMKIN LLP
Attorneys for Plaintiff
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

|  | : | Civil Action No.: |
|---|---|---|
| GERARD FENN, | : | |
| | : | |
| Plaintiff, | : | **CONSENT TO REMOVAL OF ACTION** |
| | : | |
| - against - | : | |
| | : | |
| VERIZON COMMUNICATIONS INC., | : | |
| CWA LOCAL 1109, and | : | |
| CWA INTERNATIONAL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------x

PLEASE BE ADVISED that Defendant Verizon New York, Inc. (improperly sued herein

as Verizon Communications, Inc.), by its attorneys, Edwards Angell Palmer & Dodge LLP,

hereby consents to removal of the instant proceeding from New York Supreme Court, New York

County, to the United States District Court for the Southern District of New York.

By: _____

　　Scott H. Casher, Esq. (SC-7903)
　　Edwards Angell Palmer & Dodge LLP
　　750 Lexington Avenue
　　New York, New York  10022
　　212.308.4411

Dated:  New York, New York
　　　　March 6, 2008

　　　　　　　　Respectfully submitted,

　　　　　　　　Amy S. Young, Esq. (AY-5547)
　　　　　　　　Attorney for the Communications Workers of America and
　　　　　　　　　　Local 1109
　　　　　　　　275 Seventh Avenue, Ste. 2300
　　　　　　　　New York, New York  10001