UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERALD FENN,

                    Plaintiff,

      -against-

VERIZON COMMUNICATIONS, INC.,
CWA LOCAL 1109, CWA
INTERNATIONAL,

                 Defendants.

**MEMORANDUM OPINION
AND ORDER**

08 Civ. 2348 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

           Plaintiff Gerald Fenn initiated this action on October 31, 2007, in the

Supreme Court of the State of New York, by filing a complaint alleging gender and

religious discrimination in the form of hostile work environment harassment and

retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y.

Executive Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"),

New York City Administrative Code § 8-107 et seq.  Fenn named as defendants his

employer, Verizon Communications, Inc., and his local and international union ("Union

Defendants").  (Cmplt. ¶ 1)  Fenn alleges that Defendants caused him or permitted him to

suffer severe harassment and intimidation in the form of offensive religious and gender-

based remarks, graffiti, and physical intimidation, all of which began after Fenn

performed three hours of overtime work in violation of union members' protocol.

           On March 6, 2008, Defendants removed the action to federal court on the

ground that Fenn's claims against the Union Defendants are preempted by Section 301 of

the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which preempts state

law claims against labor organizations that are subsumed by the duty of fair

representation.  (Docket No. 1, Notice of Removal ¶¶ 5-8)

Verizon and the Union Defendants have moved for summary judgment on

all of Plaintiff's claims.  (Docket Nos. 20 & 25)  Because Fenn's union-related claims are

preempted and fall outside the statute of limitations for suits alleging breach of the duty

of fair representation, and because Fenn has offered no evidence that he was harassed

because of his sex or his religion or that he was retaliated against because he engaged in

protected activity, Defendants' motions for summary judgment will be GRANTED.

## **BACKGROUND**

Fenn has been a Verizon employee and member of CWA and Local 1109

since May 1979.  (Verizon Rule 56.1 Stat. ¶ 1)[1]  For the past fifteen years, Fenn has

worked as a cable maintenance splicer.  He took a medical leave in November 2004,

related to a back injury suffered in the course of his employment and unrelated to this

case.  (Id. ¶ 2)  Prior to taking leave, Fenn was assigned to Verizon's 26th Avenue

Garage in Brooklyn.  (Id. ¶ 1)

On March 17, 2004, Fenn called his supervisor at the end of his daily shift

and obtained authorization to work incidental overtime to complete a work assignment.

(Id. ¶ 5; Pltf. Dep. at 54-55, 56)  In seeking and obtaining this overtime assignment, Fenn

was perceived by union members as having violated an informal agreement among the

---

[1]  To the extent that this Court relies on facts drawn from a defendant's Rule 56.1
statement, it has done so because Fenn has not disputed those facts or has not done so
with citations to admissible evidence.  Where Plaintiff disagrees with Defendants'
characterization of the cited evidence, and has presented an evidentiary basis for doing
so, the Court relies on Plaintiff's characterization of the evidence.  See Cifra v. Gen. Elec.
Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in
non-movant's favor in deciding summary judgment motion).

garage's union employees that any overtime work would be assigned "to the low man on the garage's overtime list."  (Union Rule 56.1 Stat. ¶ 8)

As a result of Fenn's overtime work on March 17, union members expressed hostility and anger to him.  On March 18, 2004, union member Frank Bruno confronted Fenn in a threatening manner, shouted at him, and called him a "scumbag [for] working three hours overtime, incidental."  (Verizon Rule 56.1 Stat. ¶ 6; Pltf. Dep. at 54-55, 61)  After Fenn complained to Tony Anastasio, Local 1109's business agent (id. ¶ 6;  Pltf. Dep. at 63, 183), on March 22, 2004, Bruno confronted Fenn again, shouting "Who the fuck are you to call the union on me?"  (Verizon Rule 56.1 Stat. ¶ 7)

Fenn later observed graffiti ridiculing him in sexually explicit, demeaning, and offensive ways.  On April 7, 2004, Fenn observed graffiti in a men's bathroom at Verizon's central office men's bathroom.  The graffiti included a "cartoon" of Fenn performing fellatio, and the words "Jerry Fenn likes hairy men," and "Jerry Fenn still likes his dildo greasy."  (Verizon Rule 56.1 Stat. ¶ 8; Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 8; Pltf. Dep. at 71, 77, 166-67)  Fenn immediately reported the graffiti to his foreman.  (Verizon Rule 56.1 Stat. ¶ 9; Pltf. Dep. at 79-81)  The men's bathrooms at Verizon had always contained sexually graphic and offensive graffiti referencing homosexuality and containing a variety of slurs (Verizon Rule 56.1 Stat. ¶ 4; Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 4), but Plaintiff was never bothered or offended by such graffiti until his "name hit the wall" in April 2004.  (Verizon Rule 56.1 Stat. ¶ 4; Pltf. Dep. at 215)  Indeed – prior to March 2004 – Fenn had not experienced any problems with his co-workers during his twenty-five years at Verizon, and he had been "happy" in his job.  (Verizon Rule 56.1 Stat. ¶ 3; Pltf. Dep. at 51)

On April 20, 2004, a co-worker shouted that Fenn was a "scumbag" as Fenn and his partner, Paul Barrese, were exiting the 26th Street Garage. (Verizon Rule 56.1 Stat. ¶ 8; Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 8; Pltf. Dep. at 83) Later that day, Fenn observed new graffiti in the men's restroom in the form of drawings of male genitalia and the phrase, "Gerry Fenn is a Jewish dwarf." (Id.) Fenn complained to his foreman and showed him photographs of the offensive graffiti. (Pltf. Dep. at 89-93) On April 21, 2004, Fenn discovered more graffiti on a table in the break room reading, "Gerry Fenn is a Rat Fuck." (Verizon Rule 56.1 Stat. ¶ 8; Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 8; Pltf. Dep. at 93) Fenn again complained to his supervisors and showed them the graffiti. (Pltf. Dep. at 93-94)

Later on April 21, 2004, while Fenn and Barrese were in the back of the Verizon truck they shared, Tony Anastasio – Local 1109 business agent – and Chris Calabrese – a Local 1109 union steward – approached them in a threatening manner and demanded that Fenn hand over his camera, memory card, and any photos he had taken of the offensive graffiti. (Verizon Rule 56.1 Stat. ¶ 10; Pltf. Dep. at 95-96, 98-99) Anastasio yelled in an intimidating manner, "You don't know how serious this is. Somebody could get fired. If you don't give us this stuff, you won't – there won't be one place in this country you could not be known as a rat fuck." (Id.) Thereafter, Tony Anastasio represented that he would speak with "the guys" about stopping the harassing graffiti. (Pltf. Rule 56.1 Counter-Stat. to Union ¶ 20; Pltf. Dep. at 124) Fenn was not physically harmed or explicitly threatened with physical violence during these incidents, but he felt physically threatened and intimidated. (Verizon Rule 56.1 Stat. ¶ 10; Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 10; Pltf. Dep. at 96, 200; Fenn Aff. ¶ 9)

Fenn then began limiting his interaction with co-workers by waiting in the hallway instead of going into the break room to receive his daily work assignments. (Pltf. Rule 56.1 Stat., Add. Mat. Facts ¶ 8)  He eventually received his assignments in the parking lot outside the Garage.  (Id.)  The harassment continued, however, and on May 3, 2004, new graffiti appeared in the bathroom of Verizon's central office reading, "Nice job turning in our top steward.  Stay out of the office you RAT."  (Union Rule 56.1 Stat. ¶ 22)  Fenn reported this incident to Verizon manager John McHugh and requested a change in work hours to avoid the harassment.  (Pltf. Rule 56.1 Stat., Add. Mat. Facts ¶¶ 10-11)  McHugh told Fenn that the matter would be referred to Verizon Security and suggested that Fenn speak with representatives of the Employee Assistance Program ("EAP").  (Id. ¶ 12)  Fenn met with an EAP counselor on May 19, 2004; the counselor recommended that Fenn see a psychiatrist for treatment and counseling due to trauma he was experiencing from the harassment.  (Cmplt. ¶ 18; Fenn Aff. ¶13)

New sexually explicit and harassing graffiti continued to appear on the bathroom walls, and Fenn states that Defendants made no effort to remove any of this graffiti.  (Pltf. Rule 56.1 Counter-Stat. to Verizon ¶¶ 9, 12-13, 23)  On June 22, 2004, Fenn's identification card was taken from him and deposited three miles away in the men's bathroom of Verizon's central office.  (Verizon Rule 56.1 Stat. ¶ 11; Pltf. Rule 56.1 Stat., Add. Mat. Facts ¶ 14)  Fenn again complained about the ongoing harassment and was referred to Verizon's Human Resources Help Line, an automated system.  Fenn called the Help Line and left a voicemail (Pltf. Rule 56.1 Counter-Stat. ¶ 11; Pltf. Dep. at 112-13), but never received a return call.  (Id.)

On June 23, 2004, Fenn called Verizon Security Officer Derrell Nelson and described the harassment he was experiencing at work, including the graffiti. Nelson stated that no Verizon supervisor or manager had reported Fenn's complaints to Verizon Security. (Pltf. Rule 56.1 Stat., Add. Mat. Facts ¶¶ 17-19)  Fenn met with the Security Department on June 29, 2004, and was told that an investigation had been conducted, but that Security was not able to determine who was responsible for the harassment.  (Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 17; Pltf. Dep. at 119; Young Decl., Ex. B)  Fenn was instructed to return to work, to report any new incidents to security, and assured that management would "restate Verizon's harassment policy [to] the guys."  (Pltf. Rule 56.1 Stat. ¶ 17; Fenn Aff. ¶ 21)  Fenn continued to have contact with security officer Nelson about the harassment and asked for a work transfer, but did not hear back from Nelson. (Pltf. Rule 56.1 Stat., Add. Mat. Facts ¶ 22)  Fenn continued to observe offensive graffiti naming him until his last day of work on November 1, 2004.   (Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 18; Pltf. Dep. at 161, 163)

In December 2006, Fenn's manager, Ronald Abraham, contacted Fenn at home and advised that if Fenn was thinking of pursuing legal action against Verizon, he would have to resign.  (Pltf. Rule 56.1 Stat., Add. Mat. Facts. ¶ 31)  Fenn perceived Abraham's statement as a threat.  (Id. ¶ 32)  On November 2, 2006, Fenn wrote to the President of Local 1109 and copied the President of Defendant CWA about these incidents, asking them to file a grievance on his behalf but received no response.[2]  (Pltf. 56.1 Stat.  ¶¶ 29, 30)  Fenn had already communicated with Local 1109 in October of

---

[2] On the same day Fenn sent a letter to the National Labor Relations Board, but did not file any formal complaint.  (Pltf. Dep. at 133-134; 202-203)

2006 and was informed that it was too late to file a grievance according to the collective bargaining agreement between Local 1109 and Verizon as more than one year had passed since an incident of alleged harassment had occurred.  (Pltf. Dep. at 216-219)

On June 27, 2007, Fenn filed a charge of discrimination with the New York State Division of Human Rights (Pltf. Rule 56.1 Counter-Stat. to Verizon ¶ 21; Young Decl., Ex. I), and on October 31, 2007, he filed this lawsuit in New York state court.  Although the Complaint alleged no federal claims, on March 6, 2008, the Union Defendants removed this action to federal court on grounds that Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Notice of Removal ¶¶ 5-7, Docket No. 1)

It is undisputed that Plaintiff is not homosexual, is not Jewish, and is not a dwarf, and there is no evidence that Plaintiff's co-workers perceived him as such. (Verizon Rule 56.1 Stat. ¶ 9; Pltf. Dep. at 74, 84; Fenn Aff. ¶ 29)

## DISCUSSION

Defendants are entitled to summary judgment on Plaintiff's NYSHRL and NYCHRL claims for hostile work environment harassment based on sex and religion, and retaliation.  Because Fenn's union-related claims are preempted by the LMRA and were brought after the applicable statute of limitations had expired, those claims must be dismissed.  Fenn's discrimination claims also fail on the merits, because the evidence demonstrates that he was harassed not because of his sex or religion, but because he was perceived as having violated an informal agreement among union members concerning the parceling out of overtime work.  Fenn has likewise offered no evidence demonstrating that he was retaliated against for having engaged in protected activity.

I.     **PLAINTIFF'S STATE LAW CLAIMS AGAINST THE UNION DEFENDANTS ARE PREEMPTED UNDER LMRA § 301 AND ARE TIME-BARRED**

The Union Defendants removed this action to federal court on the ground that Plaintiff's state law claims were preempted by Section 301 of the LMRA.  If removal was improper, the Court lacks subject matter jurisdiction.  (Docket No. 1, Notice of Removal ¶¶ 5-8)  Generally, removal is proper if an action originally filed in state court could have been filed in federal court.  28 U.S.C. § 1441(a) (2000).  Absent diversity of citizenship,[3] this occurs "when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Although the general rule is that removal "is not permitted simply because a defendant intends to defend the case on the basis of federal preemption," Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003), there is an exception for state law claims that are completely preempted by federal law, meaning "that any claim based on preempted state law is considered a federal claim arising under federal law."  Id. (quoting Foy v. Pratt & Whitney Group, 127 F.3d 229, 232 (2d Cir. 1997)).  Section 301 of the LMRA has this "'unusual pre-emptive power.'"  Id. (citing Livadas v. Bradshaw, 512 U.S. 107 (1994)).  "Thus, even though the parties agree that plaintiff's well-pleaded complaint alleges on its face only state claims, and no one argues that diversity of citizenship exists between the

---

[3]  No party has contended that diversity jurisdiction exists here.  The Complaint, however, pleads that the Plaintiff is a resident of Union County, New Jersey; that Verizon's principal place of business is in New York; and that Local 1109 and CWA International have their principal place of business in New York and Washington, D.C., respectively.  (Cmplt. ¶¶ 2-5).  The Complaint also seeks $2 million in damages under each cause of action and $2 million in punitive damages.  Accordingly, it would appear that diversity jurisdiction exists under 28 U.S.C. § 1332 even absent preemption under LMRA § 301.

parties, if plaintiff's state 'claims are preempted by section 301, federal jurisdiction exists and the removal of his case was proper.'"  Id. (quoting Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir. 1997)).

State law claims are preempted under Section 301 if their resolution requires interpretation of a collective bargaining agreement ("CBA").[4]  Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405-406 (1988).  Mere reference to such an agreement does not, however, preempt state law claims; interpretation of a CBA must be central to the action.  Id. at 408; Livadas v. Bradshaw, 512 U.S. 107 (1994).  "The Second Circuit has recognized that the starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim.  The court then considers whether adjudication of any element of that claim requires interpretation of the parties' collective bargaining agreement."  Zuckerman v. Volume Servs. Am., Inc., 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004) (citing Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997)); see also Bryant v. Verizon Communs., Inc., 550 F. Supp. 2d 51, 527 (S.D.N.Y. 2008).

Here, the Complaint alleges that the Union Defendants:

violated the NYCHRL and the NYSHRL by refusing to file a grievance based upon Plaintiff's complaints to the Union of the discrimination and harassment he experienced.  Defendants CWA Local 1109 and CWA International['s] acquiescence to the discrimination was a deliberate act of

---

[4] Section 301(a), 29 U.S. C. § 185(a), provides:  "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

9

retaliation in response to Plaintiff's complaints and opposition to Defendants' unlawful discrimination.

(Cmplt. ¶ 51)

"Courts in our Circuit have held a variety of claims brought against Unions – including state law discrimination claims – to be preempted by federal law, where resolution of the claim would require interpreting terms of the collective-bargaining agreement."  Cooper v. Wyeth Ayerst Lederle, 34 F. Supp. 2d 197, 202 (S.D.N.Y. 1999) (citing cases).  Whether the Union Defendants' failure to file a grievance on Fenn's behalf was an act of discrimination under state law depends, in part, on whether the CBA permitted or required them to do so.

In Cooper, plaintiff argued "that because her state law discrimination claims against the Union do not seek redress for violations of the collective-bargaining agreement, they are not preempted by federal labor law."  The court nonetheless found that plaintiff's NYSHRL claims were preempted:

> Among plaintiff's allegations against the Union is that the Union failed to appropriately address her claims of [her supervisor's] harassment and abuse, and that plaintiff's grievance against [her supervisor] was not properly addressed or resolved.  Resolving these claims will require this Court to interpret provisions of the collective-bargaining agreement:  for example, how the Union should address employee grievances.  Accordingly, this Court finds plaintiff's state law claims preempted.

Cooper, 34 F. Supp. 2d at 202.

Fenn makes the same type of allegations here, and resolution of his claims against the Union Defendants would likewise require interpretation of the governing CBA.  Accordingly, Fenn's state law claims are preempted by LMRA § 301 and this action was properly removed to federal court.

10

Fenn's state law claims against the Union Defendants are also preempted because they are subsumed by the Union Defendants' federal duty of fair representation. State law claims are preempted if they attempt to impose obligations on a union that are subsumed by this duty.   See Cabrera v. New York City, 436 F. Supp. 2d 635, 646 (S.D.N.Y. 2006) (holding that "because [plaintiff] claims that the Union Defendants violated [the] NYHRL by not properly representing her, this claim is preempted"); Marrero v. City of New York, No. 02 Civ. 6634 (DLC), 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003) (finding plaintiff's NYSHRL claim against union preempted where it was based on claim of inadequate representation at grievance hearing); Snay v. U.S. Postal Service, 31 F. Supp.2d 92, 99 (1998) (NYSHRL claims preempted where based on plaintiff's claim that union defendants failed to file or prematurely withdrew certain grievances).

The Supreme Court has interpreted the National Labor Relations Act to impose a "duty of fair representation" on unions to act on behalf of their members "without hostility or discrimination . . . [in] complete good faith and honesty . . . to avoid arbitrary conduct."  Vaca v. Sipes, 386 U.S. 171, 177 (1967).  The NLRA authorizes a union to act as employees' exclusive representative in the collective bargaining process. 29 U.S.C. §§ 158(b), 159(a).  Plaintiff argues that his state claims against the Union Defendants arise because "the union, through its shop steward Bruno and its business agents Calabrese and Anastasio, played a significant role in the discrimination and subsequent retaliation to which he was subjected."  (Opp. at 45)  To the extent that union representatives violated state laws by treating him differently than other members because of his gender or religion, they also violated the federal duty of fair

11

representation.  Thus, because the NYSHRL and NYCHRL "create[] no new rights for an employee and imposes no new duty on a union not already clearly present under existing federal labor law," they are preempted.  Snay, 31 F. Supp.2d at 99 (citing Welch v. General Motors Corp., Buick Motor Div., 922 F.2d 287, 294 (6th Cir. 1990)).

        Because Plaintiff's claims against the Union Defendants are preempted by LMRA § 301 and the federal duty of fair representation, they are governed by the six-month statute of limitations applicable to such claims.  See DelCostello v. Int'l Bhd of Teamsters, 462 U.S. 151, 169-70 (1983) (referring to section 10(b) of the National Labor Relations Act, "which establishes a 6-month period for making charges of unfair labor practices to the NLRB," as the statute of limitations for a duty of fair representation suit); Carrion v. Enterprise Ass'n, 227 F.3d 29, 32 (2d Cir. 2000) (acknowledging that section 10(b)'s six-month limitations period applies to fair representation claims); Haynes v. Quality Mkts., 307 Fed. Appx. 473, 475 (2d Cir. N.Y. 2008).

        The Second Circuit "ha[s] consistently held that, in a suit alleging a breach of the duty of fair representation brought by union members against their union, 'the cause of action accrue[s] no later than the time when [the union members] knew or reasonably should have known that . . . a breach has occurred.'"  Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) (quoting Santos v. District Council of New York City, 619 F.2d 963, 969 (2d Cir. 1980)).  Here, the last discriminatory act allegedly committed by Local 1109 and CWA International occurred in November 2006, when John Dempsey, President of Local 1109, and Morton Bahr, President of CWA International, failed to follow up on Fenn's request that the unions pursue his claims for harassment and retaliation against Verizon.  (Pltf. Rule 56.1

Stat. ¶ 29)  Plaintiff's Complaint was filed in October 2007, almost a year later.

Accordingly, the claims against the Union Defendants are time-barred and must be

dismissed.[5]

## II.     LEGAL STANDARDS APPLICABLE TO CLAIMS AGAINST VERIZON

The standards for evaluating hostile work environment and retaliation

claims under the NYSHRL are the same as those applicable to Title VII claims.[6]  See

------------------------

[5]  The Court has determined that it is appropriate to resolve the claims against Verizon
through the exercise of its supplemental jurisdiction:

> Under 28 U.S.C. § 1367(a), district courts have
> "supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original
> jurisdiction that they form part of the same case or
> controversy under Article III of the United States
> Constitution". . . . [T]he district court may, at its discretion,
> exercise supplemental jurisdiction over state law claims
> even where it has dismissed all claims over which it had
> original jurisdiction, see 28 U.S.C. § 1367(c)(3). . . .

Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996) (citing
Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir. 1992); In re Joint Eastern and Southern
Dist. Asbestos Litig., 14 F.3d 726, 730 n.2 (2d Cir. 1993)).  In determining whether
supplemental jurisdiction should be exercised where federal claims have been dismissed,
courts consider "factors such as judicial economy, convenience, fairness, and comity."
Nowak, 81 F.3d at 1191.  This case has been pending since October 2007, full discovery
has been taken, and the parties have submitted extensive briefing addressing the merits of
Fenn's claims under state law.  Remand at this stage would be costly and burdensome to
the parties and would substantially delay final resolution of Fenn's claims.  Accordingly,
the exercise of supplemental jurisdiction is appropriate.

[6] NYSHRL § 296 states, in relevant part:

> 1. It shall be an unlawful discriminatory practice:
> (a) For an employer or licensing agency, because of an
> individual's age, race, creed, color, national origin, sexual
> orientation, military status, sex, disability, predisposing
> genetic characteristics, marital status, or domestic violence
> victim status, to refuse to hire or employ or to bar or to
> discharge from employment such individual or to
> discriminate against such individual in compensation or in
> terms, conditions or privileges of employment.

<u>Torres v. Pisano</u>, 116 F.3d 625, 629 n.1 (2d Cir. 1977) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII"), <u>cert. denied</u>, 522 U.S. 997 (1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1305 n.4 (2d Cir. 1995) (noting that New York courts apply the same standards of proof to state and local claims of employment discrimination as to those brought under Title VII); <u>Williams v. City of New York</u>, No. 99 Civ. 2697 (ARR)(LB), 2006 WL 2668211, at *24 (E.D.N.Y. Sept. 11, 2006); <u>Salvatore v. KLM Royal Dutch Airlines</u>, No. 98 Civ. 2450 (LAP), 1999 WL 796172, at *9 n.4 (S.D.N.Y. Sept. 30, 1999) (same).

   The New York City Civil Rights Restoration Act of 2005, however, changes the standard applicable to NYCHRL claims and "mandates that courts be sensitive to the distinctive language, purposes, and method of analysis required by the City HRL, requiring an analysis more stringent than that called for under either Title VII

---

   . . .

    (c) For a labor organization, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer.

NYCHRL § 8-107[1](a) states, in relevant part:

    1. Employment. It shall be an unlawful discriminatory practice:
    (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

14

or the State HRL." <u>Williams v. New York City Housing Authority</u>, 2009 WL 173522, at

*3 (App. Div. 1st Dep't Jan. 27, 2009).  In <u>Williams</u>, the First Department interpreted the

New York City Civil Rights Restoration Act for the first time, in the context of hostile

work environment and retaliation claims, and held that it was no longer appropriate to

apply Title VII standards to such claims, given the broader protections offered by the

NYCHRL.  <u>Id.</u>  <u>Williams</u> did not, however, alter the requirement that a plaintiff alleging

(1) a NYCHRL hostile work environment claim demonstrate that he is a member of a

protected class, or (2) a NYCHRL retaliation claim demonstrate that he was retaliated

against for engaging in protected activity.[7]

## A.   **Summary Judgment**

Summary judgment is appropriate only when the "pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  Whether facts are material is a determination made by looking to

substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Whether

"[a] dispute about a genuine issue exists" depends on whether "the evidence is such that a

reasonable jury could decide in the non-movant's favor."  <u>Beyer v. County of Nassau</u>,

524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks omitted).  Courts "resolve all

ambiguities, and credit all factual inferences that could rationally be drawn, in favor of

---

[7]  The broader reach of the NYCHRL has no effect in this case, because – as noted above and as discussed in detail below – Fenn was harassed not because of his sex or religion, but because he was perceived as having violated an informal agreement among union members concerning the parceling out of overtime work.

the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as in the current case, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). See also Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.")

District courts must be cautious in granting summary judgment in employment discrimination cases, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997)

(citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).

Nevertheless, it "is now beyond cavil that summary judgment may be appropriate even in

the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Airlines, Inc.,

239 F.3d 456, 466 (2d Cir. 2001) ("the salutary purposes of summary judgment –

avoiding protracted, expensive and harassing trials –apply no less to discrimination cases

than to . . . other areas of litigation") (internal quotation marks omitted).

   The Court must take a "totality of the circumstances approach" and look to

"the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff,'" Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000), including "not only

reported acts of harassment committed against a plaintiff, but also unreported incidents of

harassment." Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 441

(S.D.N.Y. 2009) (citing Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998)

("[T]he fact that the incidents were or were not reported is irrelevant to a determination

of whether or not a hostile environment existed.")).  The Court may also consider the

treatment of a plaintiff's coworkers.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570

(2d Cir. 2000) ("[A] plaintiff who herself experiences discriminatory harassment need not

be the target of other instances of hostility in order for those incidents to support her

claim."); Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (plaintiff's

second-hand knowledge of racially derogatory comments or jokes can impact work

environment).

   Employment discrimination claims under Title VII require a showing that

the conduct complained of occurred because of a plaintiff's membership in a protected

class.  A plaintiff is a member of a protected class if he is discriminated against because of his "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2; <u>see</u> <u>Brennan v. Metro. Opera Ass'n</u>, 192 F.3d 310, 318 (2d Cir. 1999).  Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable.[8]

### B.    Hostile Work Environment Sexual Harassment

To make out a <u>prima facie</u> claim of sexual harassment based on hostile work environment under the NYSHRL, a plaintiff must demonstrate "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the [defendant]." <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation marks omitted).  The first element is both objective and subjective.  <u>Id.</u>  The alleged misconduct "must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks omitted).  Whether the alleged conduct was sufficiently "severe or pervasive" to create an objectively hostile or abusive work environment is determined by considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically

_____

[8]  Unlike under Title VII, a claim for discrimination based on sexual orientation is cognizable under the NYCHRL and the NYSHRL.  <u>See</u> <u>Simonton v. Runyon</u>, 232 F.3d 33, 35 (2d Cir. 2000) ("The law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation."); <u>Dawson v. Bumble & Bumble</u>, 246 F. Supp. 2d 301, 313 (S.D.N.Y. 2003) (recognizing distinction between Title VII and state law).  This distinction is not relevant here, however, because "Fenn is not alleging discrimination on the basis of sexual orientation," but rather on the basis of his gender.  (Opp. at 15)

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004) (internal quotation marks omitted); see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993) (listing factors a court may consider in weighing hostile work environment claim).

      "There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment. . . ." Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002). Rather, in assessing a hostile work environment claim, the court "must determine the existence of sexual harassment in light of the record as a whole and the totality of [the] circumstances," Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986)), "on a case by case basis considering all the individual facts at hand." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 607 (2d Cir. 2006). While "isolated incidents [of harassment] ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment." Patterson, 375 F.3d at 227. Moreover, "[w]hen the alleged harassment is attributable to a co-worker, as opposed to a supervisor, a plaintiff must also show that the employer [or union] 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" Ciccotto v. LCOR, Inc., No. 99 Civ. 11646 (RMB), 2001 WL 514304, at *3 (S.D.N.Y. Jan. 31, 2001) (quoting Distasio v. Perkin Elmer Corp., 157 F.3d 55, 63 (2d Cir. 1998)).

      Under the NYCHRL, it appears that a somewhat more relaxed standard applies for establishing a hostile work environment claim. Williams, 2009 WL 173522,

at *8, states that under the NYCHRL, "the primary issue for a trier of fact in harassment

cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a

preponderance of the evidence that she has been treated less well than other employees

because of her gender.  At the summary judgment stage, judgment should normally be

denied to a defendant if there exist triable issues of fact as to whether such conduct

occurred." Id. at *13 (citing New York City Administrative Code § 8-107(1)(a) and

Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 748-49 (Sup. Ct. N.Y. Cty. 2006)

("Under the City's law, liability should be determined by the existence of unequal

treatment, and questions of severity and frequency reserved for consideration of

damages.")).

    **C.**    **Retaliation**

        Retaliation claims under the NYSHRL are evaluated under the same

standard as Title VII.  Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006);

Harper v. N.Y. City Hous. Auth., No. 09 Civ. 5303 (SHS), 2009 WL 3861937, at *5

(S.D.N.Y. Nov. 6, 2009).

        To establish a prima facie claim of retaliation under Title VII, a plaintiff

must show "(1) participation in a protected activity; (2) that the defendant knew of the

protected activity; (3) adverse employment action; and (4) a causal connection between

plaintiff's protected activity and the adverse employment action."[9]  Gordon v. New York

---

[9]  The same standard applies to alleged retaliation by the plaintiff's union:  "Both Title
VII and the HRL also make it an unlawful employment practice for a labor union to
retaliate against a member.  42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(1)(e).  To
establish a prima facie case of retaliation, a plaintiff must show that:  (1) he was
participating in a protected activity that was known to the union; (2) he suffered an
adverse employment action; and (3) there is a causal connection between the protected

City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000); see also Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004); accord Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).  "An employee engages in a protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  Blake-McIntosh v. Cadbury Beverages, Inc., No. 3:96 Civ. 2554, 1999 WL 643661, at *13 (D. Conn. Aug. 10, 1999) (quoting 42 U.S.C. § 2000e-3(a)).  Accordingly, a plaintiff in Fenn's position must allege that he opposed a practice that targeted him because of his sex or religion.

        "The anti-retaliation provision of Title VII is not limited to discriminatory actions that alter or 'affect the terms and conditions of employment.'"  Tepperwien, 606 F. Supp. 2d at 444 (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).  "[A]ctionable retaliation" is behavior that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern, 548 U.S. at 68 (internal quotation marks omitted).  A plaintiff need not show that the practices he or she opposed actually violated Title VII, but only that the plaintiff possessed a good faith reasonable belief that the underlying employment practice opposed was unlawful.  See Quinn, 159 F.3d at 769; Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  "[W]hether an undesirable employment action qualifies as being adverse is a heavily fact-specific, contextual

---

activity and the adverse employment action."  Martin v. New York State Dep't of Correctional Servs., 115 F. Supp. 2d 307, 313-14 (N.D.N.Y 2000).

determination." <u>Zelnik v. Fashion Institute of Technology</u>, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotation marks omitted).

        A plaintiff raising a retaliation claim is not required to demonstrate that retaliatory motive was the sole cause for an allegedly adverse employment action.  Such a plaintiff need only demonstrate that a triable issue of fact exists as to whether "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause." <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990).  After a plaintiff establishes a <u>prima facie</u> case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  If the defendant satisfies that burden, the plaintiff must establish that the proffered reason was merely a pretext for retaliation.  <u>Id.</u> at 804.

        Under the NYCHRL, <u>Williams</u> states that retaliation for engaging in protected activity is proscribed "'in any manner'" and that "no challenged conduct may be deemed nonretaliatory before a determination [has been made] that a jury could not reasonably conclude from the evidence that such conduct was . . . 'reasonably likely to deter a person from engaging in protected activity.'" <u>Williams</u>, 2009 WL 173522, at * 6 (quoting New York City Administrative Code § 8-107[7]).  "Accordingly, the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable. . . ." <u>Id.</u> at * 6.

## III.    <u>PLAINTIFF'S CLAIMS BASED ON RELIGION HAVE BEEN WAIVED</u>

        Although the Complaint asserts a hostile work environment claim based on religion, Plaintiff has not presented any facts or arguments in his Rule 56.1 statement or opposition brief in support of this claim.  Indeed, Plaintiff's brief contains no

discussion of this claim.  Accordingly, any such claim has been abandoned and will be

dismissed.  See Grana v. Potter, No. 06 Civ. 1173 (JFB)(ARL), 2009 WL 425913, at *15

(E.D.N.Y. Feb. 19, 2009) (considering claim abandoned because plaintiff's summary

judgment opposition "contained no factual or legal discussion" of the claim); Bronx

Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002)

(dismissing claim as abandoned because party opposing summary judgment "made no

argument in support of th[e] claim at all" in its opposition papers); Douglas v. Victor

Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (dismissing as abandoned

claims that defendants addressed in motion for summary judgment but plaintiff failed to

address in his opposition papers).[10]

## IV.   THERE IS NO EVIDENCE THAT PLAINTIFF WAS <u>DISCRIMINATED AGAINST BECAUSE OF HIS GENDER</u>

Defendants argue that Fenn's claims must fail because he is not a member

of any protected class and engaged in no form of protected activity related to membership

in a protected class.  (Verizon Br. at 17-18; Union Br. at 16, 19)  While Fenn admits that

the initial harassment may have begun because he "worked overtime hours that Local

1109 did not want him to work," he claims that the "harassment quickly developed into

something very different."  (Opp. at 14)  Fenn claims – for the first time in his opposition

brief – that "a general hostility towards Fenn and other males in the work place is

---

[10]  Even if the claim had not been abandoned, the existence of a single piece of graffiti reading "Gerry Fenn is a Jewish dwarf" (Cmplt. ¶ 12; Pltf. Dep. at 83-84) is insufficient to establish that Fenn, a practicing Catholic (Pltf. Dep. at 84), was discriminated against because of his religion (Catholicism) or that he was perceived as Jewish.  See Lewis v. N. Gen. Hosp., 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007) (holding that "[plaintiff] has not articulated a factual basis for any 'perceived religion' claim" and that, in any case, "the protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class") (citing cases).

demonstrated by the recurring and continuing presence of graffiti insulting to Fenn and other male employees who did not conform to the 'macho' male stereotype that was prevalent in the workplace" and that the sexually charged and offensive graffiti and comments "targeted men who were deemed antithetical to the 'strong, silent [Gary Cooper in 'High Noon'] type."  (Opp. at 13)

        As discussed below, this is a creative argument that appears to have been raised now as part of a last-ditch effort to stave off summary judgment.  The Complaint contains no hint of this theory.  There is overwhelming evidence that the animosity against Fenn arose because he violated an unwritten rule observed by his union co-workers concerning how overtime work would be distributed.[11]  It is undisputed that Fenn, during his twenty-five years of work for Verizon, had never experienced hostility or harassment from his co-workers or the union until he breached this union rule.  (Pltf. Dep. at 51)  Similarly, while sexually explicit and offensive graffiti had always been present in men's bathrooms in Verizon facilities, such graffiti had never targeted Fenn until he breached union protocol concerning overtime work.  (Pltf. Dep. at 215)

        Recognizing that these facts do not support the discrimination claims set forth in the Complaint, Plaintiff now asserts, for the first time and in conclusory fashion, that while the impetus for the harassment was his breach of union protocol, the harassment later was based on male stereotyping.  Because there is no evidence supporting this claim, Fenn has failed to raise a material issue of fact as to whether he

---

[11]  For example, Fenn testified at his deposition that he was the subject of offensive graffiti because union official "Frank Bruno didn't approve of my working three hours overtime."  (Fenn Dep. at 74)  Similarly, when Fenn reported the harassment to Verizon security personnel, he explained that he was "being harassed because [he] was awarded three hours overtime from [his] foreman."  Id. at 199.

was discriminated against on the basis of male sex stereotypes.  Accordingly, his

discrimination claims will be dismissed.

    A.    <u>Same-Sex Discrimination</u>

        A hostile work environment may exist based on same sex harassment, and

the "fundamental analysis is no different in the same-sex sexual harassment context."

<u>Tepperwein</u>, 606 F. Supp. 2d at 441.  In <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523

U.S. 75, 79 (1998), the Supreme Court held that "nothing in Title VII necessarily bars a

claim of discrimination 'because of . . . sex' merely because the plaintiff and the

defendant . . . are of the same sex."  A male plaintiff claiming that he was subjected to

same-sex sexual harassment, however, "must show that he was harassed <u>because</u> he was

male," and not for some other reason.  <u>Simonton v. Runyon</u>, 232 F.3d 33, 36 (2d Cir.

2000) (emphasis added).  In <u>Oncale</u>, the Court explained that "[c]ourts and juries have

found the inference of discrimination easy to draw in most male-female sexual

harassment situations, because the challenged conduct typically involves explicit or

implicit proposals of sexual activity; it is reasonable to assume those proposals would not

have been made to someone of the same sex.  The same chain of inference would be

available to a plaintiff alleging same-sex harassment, if there were credible evidence that

the harasser was homosexual."  <u>Oncale</u>, 523 U.S. at 80 (emphasis added).

        A male plaintiff need not be homosexual to bring a valid sex

discrimination claim, however.  <u>Oncale</u> sets forth three ways a plaintiff may show that

same-sex harassment constitutes sex discrimination:  (1) by providing "credible evidence

that the harasser was homosexual," <u>Oncale</u>, 523 U.S. at 80; (2) by demonstrating that the

harasser was "motivated by general hostility to the presence of [men] in the workplace,"

id.; or (3) by "offer[ing] direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace."  Id.

A valid claim of sex discrimination may also exist where gender stereotyping has played a role in employment decisions.  In Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a female associate was denied partnership, in part, because she did not conform to certain stereotypes of femininity endorsed by her superiors.  The Supreme Court held that "in the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  Id. at 250.  The Second Circuit and other circuit courts have recognized that "[w]hen employment decisions are based on invidious sex stereotypes, a reasonable jury could infer the existence of discriminatory intent."  Sassaman v. Gamache, 566 F.3d 307, 312-313 (2d Cir. 2009); see also Simonton v. Runyon, 232 F.3d 33, 35-36 (2nd Cir. 2000) (recognizing that "a suit [by a man] alleging harassment or disparate treatment based upon nonconformity with sexual stereotypes is cognizable under Title VII as discrimination because of sex"); Smith v. City of Salem, 378 F.3d 566, 571-575 (6th Cir. 2004); Nichols v. Azteca Rest. Enters., 256 F.3d 864, 874 (9th Cir. 2001) (finding discrimination where "the systematic abuse directed at [the plaintiff] reflected a belief that [he] did not act as a man should act"); Bibby v. Phila Coca Cola Bottling Co., 260 F.3d 257, 264 (3rd Cir. 2001); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 262 n.4 (1st Cir. 1999) ("[A] man can ground a claim on evidence that other men discriminated against him because he did not meet stereotypical expectations of masculinity."); Doe v. City of Belleville, 119 F.3d 563, 581 (7th Cir. 1997).

**B.    There is No Evidence that the Harassment of
<u>Fenn Occurred Because of Gender Stereotyping</u>**

The "ultimate issue" in an employment discrimination case is "whether the plaintiff has met [his] burden of proving that [an] adverse employment decision was motivated at least in part by an 'impermissible reason.'"  <u>Stratton v. Dep't for the Aging</u>, 132 F.3d 869, 878 (2d Cir. 1997); <u>see also</u> <u>Lewis v. N. Gen. Hosp.</u>, 502 F. Supp. 2d 390, 404 (S.D.N.Y. 2007) ("Even assuming there was an objectively hostile or abusive work environment, for Title VII to apply, [plaintiff] must show that the misconduct occurred because of his membership in a protected class.").  Accordingly, Fenn must demonstrate that "[a] hostile work environment [was] created based on one or more of the forbidden considerations . . . that is, the work environment must be hostile <u>because</u> of [his gender]." <u>Siddiqi v. New York City Health & Hospitals Corp.</u>, 572 F.Supp. 2d 353, 373 (S.D.N.Y. 2008) (emphasis added) (citing <u>Oncale</u>, 523 U.S. at 81).  As discussed above, <u>Oncale</u> sets forth three approaches a plaintiff could take in attempting to establish "because of sex" same-sex discrimination.  Fenn has not offered any evidence that would support application of these theories here, nor has he offered evidence that supports any other theory of "because of sex" same-sex discrimination.[12]

As <u>Oncale</u> explains, a plaintiff can show that same-sex harassment constituted discrimination based on sex by "credible evidence that the harasser was homosexual" and harassed the plaintiff in a manner referencing sexual desire.  <u>Oncale</u>, 523 U.S. at 80.  Here, Fenn asserts that "[n]o one called Fenn a homosexual" and that "[t]here is no evidence that Fenn's co-workers suspected him to be homosexual."  (Opp.

---

[12] The examples provided in <u>Oncale</u> are not exhaustive.  <u>See</u> <u>Bibby</u>, 260 F.3d at 264; <u>Spehar v. Slater Steel Corp.</u>, 168 F.3d 998, 1009 (7th Cir. 1999).

at 15)  The conduct complained of contains no reference to sexual desire, and Fenn does not allege that any of his harassers were themselves homosexual.

The <u>Oncale</u> Court further held that a plaintiff could make out a claim by demonstrating that the harasser was "motivated by general hostility to the presence of [members of the plaintiff's sex] in the workplace."  <u>Id.</u>  The Verizon garage where Fenn worked, however, was overwhelmingly male – with sixty men and only one or two women (Pltf. Dep. at 207) – and Fenn does not allege general hostility toward men by Verizon personnel.

Finally, <u>Oncale</u> teaches that a plaintiff may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace."  <u>Id.</u>  This is the only <u>Oncale</u> method Fenn attempts to utilize. Fenn argues that he was subjected to sex discrimination because he was perceived as not adhering to accepted masculine stereotypes.  (Opp. at 17)  There is no factual support for this argument.

Fenn asserts that "comparative evidence in this case shows disparate treatment of men and women employees by the harassers," because the "offensive graffiti was disparaging only to men, not to women."  Fenn further notes that graffiti in the break room was cleaned "almost immediately so that female employees would not be subjected to it."  (Opp. at 17)  These arguments are not supported by citations to the record, however, and they are entirely conclusory and speculative.  The graffitti about which Fenn complains targeted him, not men in general.  Moreover, there is no evidence in the record as to why the graffiti in the break room was removed.  There is simply no evidence that the harassment of Fenn had anything to do with male sex stereotypes, and

Fenn cannot defeat summary judgment by making such unsupported, conclusory statements. See Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) ("A conclusory allegation without evidentiary support or allegations of particularized incidents, does not state a valid claim.") (quoting Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)).

           Courts in this Circuit routinely decline to draw such speculative inferences in discrimination cases. For example, in Simonton v. Runyon, 232 F.3d 33, 37 (2d Cir. 2000), the Second Circuit ruled that because the plaintiff did not "offer 'direct comparative evidence about how the alleged harasser treated members of both sexes in [his] mixed-sex workplace,' and d[id] not allege a basis for inferring gender-based animus, [the Court was] unable to infer that the alleged conduct would not have been directed at a woman."). Similarly, in Brennan v. Metropolitan Opera Ass'n, Inc., No. 95 Civ. 2926 (MBM), 1998 WL 193204, at *14 (S.D.N.Y. Apr. 22, 1998), aff'd, 192 F.3d 310 (2d Cir. 1999), the court held that a female employee failed to establish a hostile work environment claim based on gender where there was no evidence that the male employee about whom she complained limited his offensive behavior to women. See also Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 436-38 (S.D.N.Y. 2009) (holding that where a plaintiff "makes no attempt to identify anything in the record supporting his entirely conclusory argument that 'there is also substantive evidence that [defendant] treated men differently than women,'" the court would not consider whether credible evidence existed for alleging harassment on this basis); Martin v. New York State Dep't of Correctional Servs., 115 F. Supp. 2d 307, 312-313 (N.D.N.Y 2000) (internal citation omitted) (holding "that, to prevail on his claims, Plaintiff must show that female DOCS employees were not subjected to the same manner of

representation by Defendant as he was.  Plaintiff does not do this.  Plaintiff merely states that he was subjected to discriminatory conduct and that he believes that such conduct was motivated by the fact that he does not meet the stereotypes associated with his gender.  Under the law of the Second Circuit, this allegation is insufficient to satisfy Plaintiff's burden of proof on his claim of gender discrimination.").

While Fenn offers evidence that he was subjected to serious abuse, and that this abuse was not remedied by his employer or his union, nothing in the record supports a claim that he was harassed because he failed to conform to a sex stereotype. Although Fenn appears to argue that homosexual slurs demonstrate a belief by harassers that the victim does not conform to male sex stereotypes (Opp. at 15), court have recognized that such statements may merely be intended as insults.  As one court explained:

> That an otherwise reasonable man might be highly offended by homosexual depictions is not enough.  He must reasonably feel the homosexual depictions strike at his gender or attack him because of his gender.  There is no allegation from which the Court can conclude that the homosexual writings, drawings, and discussions intimidated, ridiculed or insulted men or masculinity.  All that is alleged is that the writings, drawings and discussions were homosexually oriented.  This is not sufficient to indicate that plaintiffs' employment environment was "discriminatorily" hostile to men.

Fox v. Sierra Dev. Co., 876 F. Supp. 1169, 1175-1176 (D. Nev. 1995); See also Simonton v. Runyon, 232 F.3d at 38 ("We do not have sufficient allegations before us to decide Simonton's claims based on stereotyping because we have no basis in the record to surmise that Simonton behaved in a stereotypically feminine manner and that the

harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation.").

There is no evidence that Fenn was perceived as effeminate or stereotyped because he engaged in stereotypically feminine behavior.  Indeed, in his affidavit, Fenn states that he has "no basis to believe that my co-workers believed that my sexual orientation is homosexual."  (Fenn Aff. ¶ 29).  Accordingly, no reasonable fact-finder could find that sex stereotyping took place here, and Fenn's recent epiphany that he was discriminated against because of sex stereotyping will not defeat summary judgment.

In Brown v. Henderson, 257 F.3d 246 (2d. Cir. 2001), the Second Circuit dealt with a similar last-minute conversion and facts that likewise involved co-worker hostility associated with union activities.  In Brown, plaintiff alleged gender discrimination stemming from sexually explicit and offensive comments and depictions by co-workers.  The hostile acts began during a hotly contested union election, and "continued beyond the conclusion of the election."  257 F.3d at 249.  Prior to the election, the plaintiff "had successfully been a shop steward for many years, seemingly without gender-related problems."  Id. at 255 n.3.  The plaintiff maintained in her EEOC complaint and at her deposition that the harassment was "an outgrowth of the[] dispute over the union election. . . . [S]he never suggested [prior to summary judgment] that [her co-workers'] antagonism toward her was related to her being a woman."  Id. at 255.  In opposing summary judgment, however, plaintiff asserted that she experienced workplace harassment because of her sex.

The Second Circuit rejected plaintiff's effort to "rescue her claim with a last-minute conversion to the position that . . . she faced adverse conditions because she is

a woman." Id. at 256.  The Court noted that "until her affidavit in opposition to summary

judgment, Brown gave every indication that, in her view, what made her tormentors'

conduct 'sexual harassment' was the fact that the behavior touched on matters of

sexuality . . . and not that it was a form of sex discrimination." Id.  Because Brown

presented no credible evidence that the harassment she experienced was based on her sex

rather than the union conflict, the Second Circuit sustained the lower court's grant of

summary judgment against her.  Id. at 256.

>    Here, as in Brown, Fenn consistently explained the basis of his hostile

work environment claim as the sexual nature of graffiti he observed in the men's

bathroom.  (See, e.g., Aron Decl. Ex. C (EEOC Charge); Cmplt. ¶ 36; Pltf. Dep. at 167)

He also consistently maintained that the harassment stemmed from the overtime work he

performed on March 17, 2004.  (See, e.g., Aron Decl. Ex. C ¶ 3; Pltf. Dep. at 74, 199)

While he now alleges that the harassment actually stemmed from sex stereotyping, there

is no evidence to support this argument, and his "last-minute conversion" is not sufficient

to defeat summary judgment.  The fact that some of the harassment Fenn experienced

was sexually explicit does not establish discrimination based on Fenn's sex.

>    Title VII and related state laws only protect employees against

discrimination and harassment arising from certain protected traits or characteristics, such

as sex, race, national origin, and religion.  Fenn has failed to demonstrate that he suffered

harassment because of one or more of these traits or characteristics.  While sex

stereotyping may provide a basis for a sex discrimination claim, no reasonable fact-finder

could conclude that Fenn was subjected to harassment based on his failure to conform

with gender stereotypes.

**V.      THERE IS NO EVIDENCE OF RETALIATION**
**        <u>BASED ON PROTECTED ACTIVITY</u>**

"Protected activity" under Title VII and the state and local law statutes invoked here is activity that complains of or opposes some type of discriminatory conduct that these statutes make unlawful.  For Fenn to establish that he engaged in protected activity, therefore, he must demonstrate that he complained of discrimination or harassment based on his gender.  As discussed above, however, the record demonstrates that Fenn's complaints were based on the fact that the harassment involved offensive sexual depictions and statements, rather than that he was being harassed because he was a man.  Nothing in Fenn's file at Verizon, his communications with Verizon security, his communications with Local 1109 and the CWA, his EEOC complaint, the complaint in this action, or the deposition testimony suggests that Fenn perceived that he was being harassed because he was a man, or that the recipients of Fenn's complaints understood that he was complaining about harassment based on his gender.  Indeed, Fenn consistently attributed the harassment to his performance of overtime work in violation of union members' protocol at his garage.

Because there is no evidence that Fenn complained that he was being discriminated against because of his sex or because of sex stereotyping, there is no basis for this Court to find that he engaged in protected activity.  Accordingly, his retaliation claim will likewise be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment

(Docket Nos. 20 & 25) are GRANTED.  The Clerk of the Court is directed to terminate

these motions and to close this case.  Any other pending motions are moot.

Dated: New York, New York          SO ORDERED.
       March 15, 2010

_____
Paul G. Gardephe
United States District Judge